UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| PRISCILLA VILLARREAL | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:19-CV-00048 |
| | § | |
| THE CITY OF LAREDO, TEXAS, | § | |
| ET AL. | § | |

## DEFENDANTS ISIDRO ALANIZ, MARISELA JACAMAN AND WEBB COUNTY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FRCP 12(B)(6) TO PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Isidro Alaniz, Marisela Jacaman and Webb County ("Defendants"), by and through the undersigned attorney of record, file this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted to Plaintiff's First Amended Complaint. In support thereof, Defendants show the Court as follows:

### I.    NATURE AND STAGE OF PROCEEDING

Plaintiff filed her Original Petition on April 8, 2019. Defendants timely filed a Motion to Dismiss for Failure to State a Claim within 21 days from the date of service. Plaintiff filed her First Amended Complaint on May 29, 2019. Defendants now file this Motion to Dismiss for Failure to State a Claim to Plaintiff's Amended Complaint.

### II.    RULE 12(B)(6) STANDARD

A pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this does not require that the Plaintiff present "detailed factual allegations" to support its claims, the pleading may not be a simple recitation of the elements of a cause of action, but must contain sufficient facts, accepted as true, to "state a

claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). This standard asks for more than the possibility of the defendant's liability and requires the Plaintiff show the plausibility of entitlement to relief under the law. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557 (plausibility standard requires more than the previous "probability standard").

To survive a motion to dismiss, the complaint must present sufficient facts that would allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. While the court must take all allegations contained in the complaint as true, mere conclusory statements will not suffice. *Id.* Further, the court is not required to accept as true any legal conclusions couched as factual allegations. *Id.*

### III.    RESTATEMENT OF PLAINTIFF'S CLAIMS

Plaintiff makes eight counts in her Original Complaint. While the counts are difficult to decipher and largely repetitive, Defendants attempt to outline the basic arguments asserted by the Plaintiff as best understood by Defendants for the benefit of the Court. However, the extent of some of the allegations are unclear and should be dismissed for failure to state a claim under Rule 12(b)(6).

**Count I:**

Plaintiff argues that Defendants Alaniz and Jacaman violated the First Amendment by interfering with Plaintiff's gathering and publication of information about matters of public concern. Doc. 24 ¶¶ 131-133. Plaintiff argues that her arrest was an attempt to intimidate her and a violation of the First Amendment. *Id.* ¶ 136.

**Count II:**

Plaintiff argues that Defendants Alaniz and Jacaman violated the Fourth and Fourteenth Amendments by detaining and arresting her without probable cause. *Id.* ¶163. Plaintiff argues that Defendants Alaniz and Jacaman manufactured allegations under false pretenses in order to arrest her and charge her for of violation of Texas Penal Code art. 39.06. *Id.* ¶¶ 69-75; 165. Further, Plaintiff asserts that no reasonable official would have considered this Penal Code provision to be constitutional. *Id.* ¶¶ 170.

**Count III**:

Plaintiff argues that Defendants Alaniz and Jacaman violated the equal protection clause of the Fourteenth Amendment through a wrongful criminal investigation, arrest, and detention of Plaintiff. *Id.* at ¶¶ 174-5. Plaintiff also claims that Defendants Alaniz and Jacaman "selectively enforced the statute against Villarreal in retaliation for her citizen journalism with which they subjectively disagreed and disliked." *Id.* ¶ 177.

**Count IV:**

Plaintiff argues that "some or all" Defendants conspired to deprive her of her constitutional rights. *Id.* ¶ 188. Specifically, Defendants Alaniz and Jacaman conspired by willingly participating in the criminal investigation, arrest, and detention of Plaintiff. *Id.* ¶ 190. Plaintiff asserts that this conspiracy was intended to deprive her of her First Amendment right to speech, selectively investigate and arrest Plaintiff, and deprive her of equal protection of the law. *Id.* ¶¶ 193-196.

**Count V:**

Count V applies only to the City of Laredo and Defendant Trevino and will not directly addressed in this motion. However, Plaintiff's First Amended Complaint is confusing because, while Count V only complains of Trevino's failure to train (*Id.* ¶¶ 200-213), the facts alleged state

that Defendants Alaniz and Jacaman were responsible for training individuals within the District Attorney's office and (incredibly) the Laredo Police Department. *Id.* ¶¶ 112, 117. To the extent the Court considers these facts and actual counts, they will be addressed herein.

**Count VI**:

Count VI applies only to the City of Laredo and will not be addressed in this motion.

**Count VII:**

Plaintiff alleges that Defendant Webb County is liable for damages because the County has a policy to retaliate against Plaintiff (and only Plaintiff). *Id.* ¶ 235.

**Count VIII:**

Plaintiff seeks declaratory relief against all defendants for various violations of the Constitution. *Id.* ¶ 252.

## IV.    SUMMARY OF THE ARGUMENT

Because each count is somewhat redundant of the other counts, Defendants will address the counts as they relate to the parties. Defendants Alaniz and Jacaman have absolute immunity for any actions taken as prosecutors, and have qualified immunity to the extent the preparation of a warrant is considered an "investigation" as opposed to a "prosecution." Defendants Alaniz and Jacaman also have absolute and qualified immunity from any conspiracy to violate Plaintiff's constitutional rights because the claim is the same as the prior counts. Defendants Alaniz and Jacaman are absolutely immune from supervisor liability. Finally, there is no custom, policy, or practice that Plaintiff alleges Defendant Webb County has implemented that violate her constitutional rights.

## V.    ARGUMENT

### A.  Counts I-V: Absolute Immunity

#### a.  Absolute Immunity of Prosecutors Generally

District Attorneys and their assistants are absolutely immune from liability when performing their prosecutorial functions. *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Font v. Carr*, 867 S.W.2d 873 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.); *Miller v. Curry*, 625 S.W.2d 84, 86–87 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.). Prosecutorial functions include representing the government in filing and presenting criminal cases, as well as other acts that are "intimately associated with the judicial process." *Clawson v. Wharton County*, 941 S.W.2d 267 (Tex. App.—Corpus Christi 1996, writ denied); *Font*, 867 S.W.2d at 877; *see also Burns v. Reed,* 500 U.S. 478, 485–86 (1991) (prosecutors are absolutely immune from liability under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case," if the conduct is "intimately associated with the judicial phase of the criminal process").

"Absolute immunity protects a prosecutor even if the prosecutor acts in bad faith or with ulterior motives, so long as he or she acts within the scope of his or her prosecutorial functions." *Charleston v. Pate*, 194 S.W.3d 89, 90–91 (Tex. App.—Texarkana 2006, no pet.). "Both the Supreme Court and the Fifth Circuit have held that prosecutors are entitled to absolute immunity even when they are alleged to have knowingly presented perjured testimony, failed to disclose exculpatory evidence, and engaged in other malicious acts so long as the statements are related to the proceedings in which they were made." *Doe v. Harris County*, Texas, CV H-16-2133, 2017 WL 4402590, at *17 (S.D. Tex. Sept. 29, 2017) (mem. op.) (citations omitted). "Like witnesses, prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements

were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." *Burns*, 500 U.S. at 489–90 (Prosecutor's appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity).

To determine whether absolute immunity applies, the court must apply a "functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal citations and quotation omitted). "A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as advocate for the state in the courts, or when her conduct is intimately associated with the judicial phase of the criminal process." *Id.* (internal citation omitted). "On the other hand, a prosecutor is afforded only qualified immunity for acts performed in the course of 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Id.* (quoting *Buckley*, 509 U.S. at 273). The act of seeking an indictment is the first step in the process of seeking a conviction. "Exposing the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment at every phase of his work, since the prosecutor might come to see later decisions in terms of their effect on his potential liability. Thus, we shield the prosecutor seeking an indictment because any lesser immunity could impair the performance of a central actor in the judicial process." *Malley v. Briggs*, 475 U.S. 335, 343 (1986).

In *Buckley*, the U.S. Supreme Court discussed the circumstances in which a prosecutor is entitled to absolute immunity. *Buckley*, 509 U.S. at 269–271. A prosecutor has absolute immunity for acts initiating and pursuing a criminal prosecution, including presenting the State's case at trial

and for participating in a probable-cause hearing. *Id.* A prosecutor does not have absolute immunity for legal advice given to the police or for administrative duties and investigatory functions that do not relate to the preparation to initiate prosecution or judicial proceedings. *Id.*

### b. Defendants Alaniz and Jacaman are entitled to Absolute Immunity

Defendant Alaniz is the elected district attorney of Webb County and Defendant Jacaman is the Chief Assistant District Attorney. Doc. 24 at ¶¶ 10-11. They represent the State of Texas in all criminal cases in the 49th Judicial District. Tex. Gov't Code § 43.128. Therefore, they have absolute immunity for all cases in which they function and act as a prosecutor. *See generally Buckley*, 509 U.S. 259.

In this case, Defendants Alaniz and Jacaman were acting as prosecutors in every action alleged in Counts I through IV. *Id*. Should Plaintiff claim that Defendants Alaniz and Jacaman were not acting as prosecutors  when responding to the law enforcement officers' request for assistance in drafting the warrant for arrest, Defendants Alaniz and Jacaman assert that the review of the warrant is part of the "initiating and pursuing a criminal prosecution" for which they are entitled to absolute immunity. To the extent the drafting of a warrant does not provide a prosecutor with absolute immunity, Defendants Alaniz and Jacaman have qualified immunity from any claims relating to the warrant, as explained *infra*. Even if, as Plaintiff alleges, Defendants manufactured "criminal complaints, a search warrant affidavit and approval, and arrest warrant affidavits and approvals with the intent that Villarreal be arrested and detained in order to coerce her into ceasing her citizen journalism efforts" they are entitled to absolute immunity. *Compare* Doc. 24 ¶ 85 with *Charleston v. Pate*, 194 S.W.3d at 90–91.

Plaintiff also argues that "[a]t all relevant times, Defendants Alaniz and Jacaman were responsible for training, supervising, and employing individuals within WCDA and LPD." Doc.

24 ¶ 117. A District Attorney is absolutely immune from a "failure to train" his assistant prosecutors. *Van de Kamp v. Goldstein*, 555 U.S. 335, 339 (2009) (finding absolute immunity for (1) a failure to properly train prosecutors, (2) a failure to properly supervise prosecutors, or (3) a failure to establish an information system containing potential impeachment material about informants); *see also Connick v. Thompson*, 563 U.S. 51, 63 (2011). As to the allegation that a District Attorney is responsible for training local law enforcement, it is without merit. The Webb County District Attorney has no authority over the City of Laredo Police Department.

## B. Qualified Immunity

### a. Qualified Immunity Generally

Qualified immunity shields from liability government officials who perform their duties reasonably, and applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan,* 555 U.S. 223, 236, (2009). Public officials acting within the scope of their authority are shielded from civil liability by the doctrine of qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity protects officers sued in their individual capacity unless the alleged act violates a constitutional right that was clearly established at the time. *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro LLC v. Hilton,* 568 F.3d 181, 194 (5th Cir. 2009). "A plaintiff must clear a significant hurdle to defeat qualified immunity." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001).

The test for qualified immunity has two parts that a plaintiff must prove in order to prevail. First, the Plaintiff must establish that a public official's conduct deprived the Plaintiff of a clearly established constitutional right. *Sanchez,* 139 F.3d. at 466-7. "Clearly established" means sufficiently clear to put a reasonable officer on notice that his conduct may violate a person's

rights. *Id.; see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Feagley v. Waddill*, 868 F.2d 1437, 1439 (5th Cir.1989); *Melear v. Spears*, 862 F.2d 1177, 1187 (5th Cir.1989). "A constitutional violation does not occur every time someone feels that they have been wronged or treated unfairly. There is no constitutional right to be free from emotional distress." *Shinn on Behalf of Shinn v. Coll. Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996).

The second question for the defense of qualified immunity is whether the official's conduct was objectively reasonable. *Sanchez*, 139 F.3d at 467. Even if an official violates a person's civil rights, the official may still be entitled to qualified immunity if the conduct was objectively reasonable. *Id.*, *citing Mouille v. City of Live Oak*, 918 F.2d 548, 551 (5th Cir.1990). "Objectively reasonable" means, given the totality of the circumstances confronting the official, viewed objectively, was the action justified. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011). Trial courts are free to answer these two questions in any order they choose. *Callahan*, 555 U.S. at 236.

### b. Qualified Immunity for Arrests

In the case of a warrant issued by a court, a public official has qualified immunity. "[T]here must not even 'arguably' be probable cause for the search and arrest for immunity to be lost." *Brown*, 243 F.3d at 190. "The Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, if the arresting officer had a reasonable, good faith belief that he was arresting the correct person." *Blackwell v. Barton,* 34 F.3d 298, 303 (5th Cir.1994). "The Constitution does not guarantee that only the guilty will be arrested, for if it did...§ 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Sanchez,* 139 F.3d at 468. Qualified immunity shields officers from liability if, given the law and information known at the time, a reasonable officer <u>could have</u> believed the arrest was lawful. *Ventura v. Hardge*, 2000 WL 1123262, *3 (N.D. Tex. Aug. 7, 2000), *aff'd,* 248 F.3d 1143

(5th Cir. 2001). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Pierson v. Ray*, 386 U.S. 547, 555 (1967).

### c.  Defendants Alaniz and Jacaman are entitled to Qualified Immunity

In this case, Defendants Alaniz and Jacaman were engaged in the exercise of discretionary duties and acted within the course and scope of their duties as prosecutors of the State of Texas, with objectively reasonable expectations that their conduct was reasonable, lawful, and necessary in light of all attendant circumstances. Doc. 24 ¶¶ 10-11. At no time did the Defendants violate a clearly established constitutional right. Nor were any of the Defendants' actions objectively unreasonable. Therefore, the Defendants are entitled to qualified immunity. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).

Plaintiff alleges, throughout her Complaint, that the Defendants entered into an elaborate conspiracy to target her, specifically, by charging her with a violation of the law that any reasonable officer or prosecutor should have known was unconstitutional. However, Plaintiff fails to state why, exactly, a prosecutor should be charged with knowing the law was unconstitutional, other than that they were "trained in and practicing law." Doc. 24 ¶ 116. The statute in question, Penal Code Article 39.06(c), was declared "unconstitutionally vague" by a state district judge <u>for the first time</u> when the judge dismissed the charges against Plaintiff. Doc. 1 ¶ 111. The issue was not appealed by the District Attorney. *Id*. at ¶ 112. There is no appellate case law that declares article 39.06(c) unconstitutional, let alone case law that was known or should have been known by the Defendants prior to Plaintiff's arrest. *See Sanchez*, 139 F.3d. at 466-7. According to Plaintiff, all lawyers should know all laws that are unconstitutional. If only the bar possessed such foresight.

Plaintiff attempts to shift the burden of qualified immunity onto the Defendants. Plaintiff's

argument is that the Defendants should have known that a valid law (<u>with no negative appellate</u> <u>decisions</u>) was unconstitutional. Plaintiff states that "[n]o reasonable official would have determined Villarreal gathered and published the information in the Targeted Publications with the intent of economic gain or advantage" (Doc. 24 ¶ 76); that "any reasonable official would have understood that the information in the Targeted Publications did not meet this element" (*Id*. at ¶ 77); that "[a]ny reasonable official also would have understood that the Statute's essential element of 'information that has not been made public' required the information to qualify for an exception under the TPIA [Texas Public Information Act]" (*Id*. at ¶ 78); and that "any reasonable official would have understood that gathering and disseminating publicly-accessible and truthful information related to a matter of public concern is First Amendment activity protected from criminal penalty." (*Id*. at ¶ 79). This is a blatant attempt to turn Supreme Court case law on its head. *See generally Callahan,* 555 U.S. 223.

First, whether or not a suspect published information for "economic gain" may not be known when a warrant is issued. One of the purposes of arrest and search warrants is to find information. This is why only probable cause is required to obtain a warrant. It is not required that the officer presenting the warrant prove their case beyond a reasonable doubt to the issuing judge.

Second, the Texas Public Information Act (PIA) has exceptions and provides for a process to obtain documents from the government. *See generally* Tex. Gov't Code Ch. 552. Just because, as Plaintiff alleges, a document may later be determined to be "public" under the PIA, does not mean that the Defendants in this case had to assume that documents were public and the penal code statute was facially invalid.[1] The PIA process requires a citizen to <u>send a written request</u> for the documents to the government, who may then request an opinion from the Texas Attorney

---

[1] It should be noted that at no time has the information in the "Targeted Publications" been determined to be "public." Whether the information obtained by Plaintiff is subject to disclosure under the PIA is an open question.

General. *Id*. at §§ 552.301, 552.302, and 552.303. Plaintiff skipped all of those steps (by her own admission, Doc. 24 ¶ 65) and obtained information directly from an official who was not authorized to release the information. Plaintiff misinforms the Court when she states that all the criminal information she published was public. Not all government information is subject to release under the PIA. *Id*. at §§ 552.101, 552.102, 552.108, 552.1081, 552.1085, 552.117, 552.130, 552.132, 552.1325, 552.134, and 552.138. The reason the PIA has a procedure to request certain information is to protect privacy, typically of victims. It is ironic that Plaintiff, in <u>this</u> suit, argues that crime victim information she obtained, without following the proper procedure by making a PIA request, is proof that the Defendants should have known that article 39.06(c) is unconstitutional. By that logic, her own criminal information is "public" and should freely be published without redaction.

Defendants Alaniz and Jacaman's reliance on the probable cause stated in the warrant was objectively reasonable. Probable cause in this case was based on inherently trustworthy and tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate. The Supreme Court has found such information to be admissible for purposes of a criminal conviction, which is a much higher standard than for a civil rights case. *See United States v. Leon*, 468 U.S. 897, 907 (1984). Furthermore, Plaintiff does not state specifically why the warrant lacked probable cause, other than the PIA argument made above, which is logical fallacy.

There are only three appellate cases that discuss Article 39.06—*Reyna v. State*, 13-02-499-CR, 2006 WL 20772 (Tex. App.—Corpus Christi Jan. 5, 2006, pet. ref'd); *Tidwell v. State*, 08-11-00322-CR, 2013 WL 6405498 (Tex. App.—El Paso Dec. 4, 2013, pet. ref'd); *State v. Ford*, 179 S.W.3d 117 (Tex. App.—San Antonio 2005, no pet.). All three are criminal cases and no case or Texas Attorney General Opinion discusses the constitutionality of the statute. Plaintiff cannot

show that Defendants should have known the law violated the constitution and Plaintiff cannot meet the first prong of the qualified immunity test. *See Sanchez*, 139 F.3d. at 466-7. Therefore, Defendants are entitled to qualified immunity as a matter of law.

### C. Count IV: Conspiracy

In the alternative, Plaintiff argues that "all or some" Defendants conspired to deprive her of her constitutional rights and violated 42 U.S.C. § 1983. *Id.* at ¶ 188. Specifically, Defendants Alaniz and Jacaman are alleged to have conspired by willingly participating in the criminal investigation, arrest, and detention of Plaintiff. *Id.* at ¶ 190. This conspiracy, Plaintiff alleges, was intended to deprive Plaintiff of her First Amendment rights to speech, to selectively investigate and arrest Plaintiff, and deprive her of equal protection of the law. *Id.* at ¶¶ 191-196. Essentially, Count IV adds a conspiracy element to Counts I, II, and III.

As argued above, Defendants Alaniz and Jacaman have absolute immunity from these counts. *Burns*, 500 U.S. at 489–90 (prosecutors are absolutely immune from damages for making false or defamatory statements in judicial proceedings and for eliciting false and defamatory testimony from witnesses). Even if the conspiracy theory were true, Defendant's Alaniz and Jacaman are absolutely immune from the underlying acts on which the conspiracy is based. *Supra* at § V(A). Conspiracy itself is not a violation of § 1983.

### D. Count VII: Webb County does not a have a custom or practice of discrimination against Plaintiff

#### a. Allegations of a Policy of Discrimination Fail to State a Claim

Count VII makes a claim for liability against Webb County through the Webb County Sheriff's Office ("Sheriff") and District Attorney because the Sheriff and District Attorney allegedly had a policy of discriminating against Plaintiff (and only Plaintiff). Doc. 24 at ¶¶ 235-250.

In order for the County to be held liable for a § 1983 violation, the plaintiff must show there is a policy or custom of the County to discriminate. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690 (1978). The government is not liable for torts that are based solely on the doctrine of *respondeat superior. Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) ("Henderson County can be held liable for its non-policy-making employees' acts only if its employees were carrying out Henderson County's policies when they acted.")

The test of whether a governmental body has an official policy or custom is whether: (1) there was a policy or custom that, (2) when executed or implemented, (3) produced a constitutional tort, (4) causing injury to the plaintiff. *Id*. The 5th Circuit defined "official policy" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers; or
>
> 2. A persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *on reh'g,* 739 F.2d 993 (5th Cir. 1984). "The plaintiff must show a causal link between the police misconduct and the adoption of a policy or plan by the defendant municipality." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 813 (1985).

Plaintiff alleges that Webb County has a policy to (1) retaliate against Plaintiff for publishing and reporting information to the public and (2) restrict Plaintiff's ability to publish. Doc. 24 ¶¶ 236-7. Plaintiff alleges that the fact she was arrested proves this policy exists. *Id*. at ¶ 238-9. Plaintiff does not allege that Webb County has a policy of retaliating against anyone else, or has a general policy of violating the 1st Amendment. The policy is restricted to targeting Plaintiff alone and was implemented by the Sheriff and District Attorney Alaniz. *Id*. at ¶ 241.

### b. A County Sheriff has a legal duty to accept prisoners

The Sheriff has a duty to accept prisoners remanded to his custody by a valid warrant. The Sheriff is the keeper of the County Jail. Tex. Loc. Gov't Code § 351.041. The Code of Criminal Procedure describes the general duties of sheriffs. Article 2.17 of the Code addresses the Sheriff's duties as the County's principal peace officer. It provides:

> Each sheriff shall be a conservator of the peace in his county, and shall arrest all offenders against the laws of the State, in his view or hearing, and take them before the proper court for examination or trial. He shall quell and suppress all assaults and batteries, affrays, insurrections and unlawful assemblies. He shall apprehend and commit to jail all offenders, until an examination or trial can be had.

Tex. Code Crim. Proc. art. 2.17. The Sheriff has a duty under Article 2.17 to arrest persons offending state laws and hold the offenders he apprehends in jail until a magistrate has determined whether there is sufficient evidence of guilt to hold a suspect accused of criminal conduct (i.e., whether there is probable cause). Tex. Att'y Gen. Op. No. JM-151 (1984).

Code of Criminal Procedure Article 2.18 obligates the Sheriff to hold prisoners after a determination of probable cause is made and a warrant for arrest is issued by a magistrate or judge. Article 2.18, entitled "Custody of Prisoners," specifically addresses the Sheriff's duty as jailer and states:

> When a prisoner is committed to jail by warrant from a magistrate or court, he shall be placed in jail by the sheriff. It is a violation of duty on the part of any sheriff to permit a defendant so committed to remain out of jail, except that he may, when a defendant is committed for want of bail, or when he arrests in a bailable case, give the person arrested a reasonable time to procure bail; but he shall so guard the accused as to prevent escape.

*Id.* at art. 2.18.

The warrant referenced in Article 2.18 is defined by Article 16.20 of the Code of Criminal Procedure as an order signed by the proper magistrate directing a sheriff to receive and place in jail the person committed. *Id.* at art. 16.20. A valid warrant, signed by a Webb County District

Judge, existed in this case. Doc. 24 at ¶ 95. The Sheriff had no option about whether to admit Plaintiff into the County Jail. Tex. Code Crim. Proc. art. 2.18. It is not the Sheriff's obligation to determine if probable cause exits to hold a prisoner, nor does the Sheriff have such authority. Tex. Att'y Gen. Op. No. JM-151. Therefore, the Webb County Sheriff was performing constitutionally and statutorily mandated duties and Plaintiff has failed to state a claim.

### c. The District Attorney is not a County policy maker

To the extent Plaintiff alleges that Defendants Alaniz and Jacaman are policy makers, the case law is clear that a county may only be held liable for acts of a district attorney when he "functions as a final policymaker for the county." *Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001). For example, a district attorney sets policy regarding the hiring and firing of his assistants and staff, which can support *Monell* liability for the county. *Id*. However, the district attorney represents the State of Texas in enforcing state criminal laws. *Id*.

Whether an individual acts on behalf of the state or the county is determined by state law and by an analysis of the duties alleged to have caused the constitutional violation. *Esteves v. Brock*, 106 F.3d 674, 677–78 (5th Cir. 1997). Under Texas law, when acting as a prosecutor to enforce state penal law, a district attorney is an agent of the state, not of the county. *Id*. (citing Tex. Code Crim. Proc. art. 2.01 ("Each district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom....")). A Texas district attorney is a state official when he enforces state criminal law. *Id*. "[T]he actions of the district attorney within the scope of his prosecutorial function during a criminal proceeding do not constitute official policy for which a county can be held liable." *Id*. ("Given that a district attorney represents the state in criminal prosecutions, the county, which has no affirmative control over the prosecutor's decisions in a particular case, should not be held liable when a prosecutor engages in unconstitutional

conduct during a criminal proceeding"). Therefore, to the extent Plaintiff complains Defendant Alaniz is a "policy maker" who crafts policy on whom to prosecute, the correct defendant is the State of Texas, not Webb County.

Furthermore, Defendants Alaniz and Jacaman never even prosecuted Plaintiff. "After Villarreal posted bond and was released from physical detention at the Webb County Jail, Villarreal filed a petition for a writ of habeas corpus in the Webb County District Court on February 14, 2018." Doc. 24 ¶ 124. "On March 28, 2018, Judge Monica Z. Notzon of the 111th Judicial District of Texas issued a bench ruling on Villarreal's habeas petition, and held the Statute unconstitutionally vague. Webb County did not appeal Judge Notzon's ruling." *Id.* ¶¶ 127-8. Therefore, Defendants Alaniz and Jacaman never pursued the charges against Plaintiff. Even if the prosecutors had pursued the charges, they were acting as agents of the State, not Webb County. *Esteves*, 106 F.3d at 677.

The Court should dismiss the claims against Webb County because the "policy makers" cited in Plaintiff's complaint are not policy makers for the conduct alleged in the complaint. That is, the Sheriff must take custody a prisoner who is arrested and the District Attorney is not a policy maker when it comes to enforcing state law. No actions taken by either party impute liability on Webb County.

### E.  Count VIII: Injunction and Declaratory Relief

Plaintiff also seeks injunctive relief. Injunctive relief in this case is not appropriate because Plaintiff cannot satisfy the burden of proof for an injunction. In order to obtain a permanent injunction, Plaintiff must prove "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959). The burden of proving the likelihood of success on the merits is on the applicant for injunctive relief. *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 5 (D.D.C. 1998).

In this case, Plaintiff cannot prove that she has suffered an irreparable injury. There is no ongoing harm threated to Plaintiff. She is not in the custody of law enforcement and is not being charged for any crime. Doc. 1 at ¶¶ 111-112. Therefore, there is not irreparable harm to Plaintiff.

Further, Plaintiff's claim for declaratory relief should be denied for the same reason her request for injunction should be denied—there is no ongoing controversy or threat of harm. In order to meet the standing requirements under the Declaratory Judgment Act, the Plaintiff must establish "actual present harm or a significant possibility of future harm," *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003). No harm or threat of harm exists in this case.

## VI.   CONCLUSION

Defendants Alaniz and Jacaman have absolute and qualified immunity for Counts I-V. Plaintiff has failed to allege a specific custom or policy of Webb County that discriminated against her or violated her constitutional rights as alleged in Count VII. Finally, declaratory and injunctive relief is not appropriate in this case because there is no on-going harm or threat of future harm.

## VII.    PRAYER

Defendants Alaniz, Jacaman, and Webb County pray that this court enter an order dismissing the claims against them for failure to state a claim, that all relief requested by Plaintiff be denied, and that Defendants recover its costs and attorney's fees, along with such other relief to which they may show themselves entitled.

Respectfully submitted,

/s/ J. Eric Magee_____
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
Philip Arnold
SBN: 24044710
p.arnold@allison-bass.com
**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the below counsel for the Plaintiff.

JT Morris
jt@jtmorrislaw.com
Ramzi Khazcn
ramzi@jtmorrislaw.com
JT MORRIS LAW PLLC
1105 Nueces Street, Suite B
Austin, Texas 7870 I

Jose Salvador Tellez II
joeytellez@tellezlaw.com
1000 Washington Street. H I
Laredo. Texas 78040
*Attorneys for the Plaintiff*              /s/ J. Eric Magee_____
                                          J. Eric Magee